Jonathan Collier

954 E Oak Creek Dr

Lehi, UT 84043

435-515-2556

Jcollier71178@icloud.com

```
              FILED
              LODGED    MAIL
              RECEIVED

              JUL 28 2025

              AT SEATTLE
        CLERK U.S. DISTRICT COURT
     WESTERN DISTRICT OF WASHINGTON
     BY                    DEPUTY
```

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF WASHINGTON- WESTERN WASHINGTON

700 Stewart Street. STE 2310

SEATTLE, WA 98101

| | |
|---|---|
| JONATHAN COLLIER, ) | **COMPLAINT FOR DISABILITY** |
| ) | **DISCRIMINATION, RETALIATION AND** |
| PLAINTIFF, ) | **WRONGFUL TERMINATION** |
| ) | Case No. 2:25-cv-01418-RAJ |
| Vs ) | |
| ) | |
| COMMUNITY TRANSIT, ) | HORNORABLE |
| DEFENDANT, ) | |
| ) | |

# A. JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1331, as this action arises under federal law, specifically Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.



2. Venue is proper in the Western District of Washington pursuant to 28 U.S.C. § 1391(b), as the events giving rise to these claims occurred in Snohomish County, Washington, and Defendant is headquartered within this District.

3. Plaintiff asserts that administrative exhaustion through the Equal Employment Opportunity Commission (EEOC) is not required for Section 504 claims, as established in *Smith v. Barton*, 914 F.2d 1330 (9th Cir. 1990). For Title II claims, to the extent exhaustion may be required, Plaintiff requests equitable tolling or waiver due to his pro se status, lack of clear notice of exhaustion requirements, and good-faith belief in the validity of his claims. See 28 C.F.R. § 35.172.

## B. PARTIES

4. Plaintiff, Jonathan Collier, is an individual residing in Lehi, Utah.

5. Defendant, Community Transit, is a public transportation agency and recipient of federal financial assistance under 49 U.S.C. § 5307, headquartered in Everett, Washington.

## C. FACTUAL ALLEGATIONS

6. The plaintiff was employed as a coach operator by Community Transit from January 8, 2024, to May 22, 2024.

7. Plaintiff disclosed a physical disability affecting his mobility, which substantially limits major life activities, including walking and standing, as defined under 42 U.S.C. § 12102.

8. On or about January 10, 2024, Plaintiff requested reasonable accommodation, including exemption from a strenuous 3/4-mile uphill walk to access a bus during training, and alternative scheduling or route assignments to accommodate his mobility limitations. The Plaintiff told this to the training instructor in front of the entire class 24B. The defendant

failed to engage in the interactive process required under 29 C.F.R. § 1630.2(o)(3), providing no response or alternative accommodation. The defendant negligently trained and placed the training instructor in a training capacity on how to deal with any policies that Community Transit had regarding reasonable accommodation.

9. On or about January 10, 2024, a Community Transit training employee made a comment in the presence of Plaintiff and other trainees in class 24B, stating, "If you can't walk, you need to resign," directly referencing Plaintiff's disclosed disability. This comment created an extremely hostile work environment. This comment, made publicly in front of the plaintiff's peers, caused severe humiliation and undermined his ability to engage in training.

10. On or about January 10, 2024, Plaintiff reported the derogatory comment and reiterated his accommodation request to the Employee Engagement Department and Driver Training Manager Gabe Roper.

11. Defendant failed to initiate a timely or adequate investigation into Plaintiff's harassment complaint, demonstrating deliberate indifference under *Duvall v. County of Kitsap*, 260 F.3d 1124 (9th Cir. 2001).

12. During training, Plaintiff was excluded from hands-on backing exercises due to his experience, while other trainees participated fully. This exclusion resulted in Plaintiff receiving unequal training opportunities, further limiting his ability to meet probationary performance expectations.

13. Plaintiff was terminated on May 22, 2024, shortly after engaging in protected activities, including requesting accommodation and reporting disability-based harassment.

14. The termination letter from Caton Randolph cited "lack of adequate progress during the probationary period," despite Plaintiff receiving "satisfactory" performance evaluations, and no prior warnings or documented performance issues.

15. Other similarly situated employees without disabilities were granted extended probationary periods or additional training support, indicating disparate treatment. See *Zukle v. Regents of Univ. of Cal.*, 166 F.3d 1041 (9th Cir. 1999).

16. On July 16, 2025, Community Transit's Senior Director of Employee Engagement, Samantha Bowes, confirmed Plaintiff had submitted a harassment complaint but claimed Plaintiff did not disclose a disability, despite Plaintiff's explicit January 10, 2024, request to avoid the 3/4-mile uphill walk due to his mobility limitations in front of the entire 24B class. The letter also cited alleged "going off route" violations, which were never raised with Plaintiff prior to termination.

17. These shifting justifications for termination, combined with the lack of prior discipline and more lenient treatment of other operators, suggest pretext for disability discrimination and retaliation.

18. Plaintiff has identified witnesses, including training classmates, who can corroborate the derogatory comment, unequal training, and hostile work environment created by Defendant's actions and lack of investigating a ADA harassment complaint as required by Section 504 of the rehabilitation act.

# D. CAUSES OF ACTION

## First Cause of Action: Failure to Investigate (Section 504 of the Rehabilitation Act, 29 U.S.C. § 794)

19. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

20. Defendant's failure to investigate Plaintiff's good-faith complaint of disability-based harassment constitutes deliberate indifference, violating Section 504. Samantha Bowes' July 16, 2025, letter acknowledges Plaintiff's harassment complaint but denies knowledge of his disability, despite Plaintiff's documented accommodation request and witnessed by the entire training class. Defendant failed to inquire further or engage in the interactive process, breaching its duty under 29 C.F.R. § 1630.2(o)(3).

## Second Cause of Action: Retaliation (ADA Title II and Section 504)

21. The plaintiff engaged in protected activities by disclosing his disability, requesting accommodation, and reporting harassment.

22. Defendant retaliated by terminating Plaintiff on May 22, 2024, shortly after these protected activities.

23. The temporal proximity between Plaintiff's protected activities and termination, combined with disparate treatment compared to similarly situated employees, supports a retaliation claim under both statutes. See *Ray v. Henderson, 217 F.3d 1234* (9th Cir. 2000).

## Third Cause of Action: Wrongful Termination (ADA Title II and Section 504)

24. Defendant wrongfully terminated Plaintiff in retaliation for engaging in activities protected by the ADA and Section 504, and due to his disability, in violation of both statutes. See *Head v. Glacier Northwest, Inc.*, 413 F.3d 1053 (9th Cir. 2005). The defendant failed to try to correct any wrongdoing the plaintiff may have done, and its training program failed to adequately train the plaintiff by having him sit out exercises while the other trainees participated.

**Fourth Cause of Action: Hostile Work Environment (ADA Title II and Section 504)**

25. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.
26. Defendant's actions, including the derogatory comment by a training employee, exclusion from training exercises due to Plaintiff's experience, and failure to investigate harassment, created a hostile work environment that was severe and pervasive, altering the conditions of Plaintiff's employment. See *Meritor Sav. Bank v. Vinson*, 477 U.S. 57 (1986). This comment, made publicly in front of the plaintiff's peers, caused severe humiliation and undermined his ability to engage in training.

# E. INJURY

27. As a result of Defendant's actions, Plaintiff has suffered:

- Lost wages and benefits plus no retirement benefits and health insurance that is not comparable to Community Transit.
- Emotional distress, anxiety, and depression.

- Out of pocket medical expenses due to loss of health insurance, totaling approximately $15,000.
- A hostile work environment that impaired Plaintiff's ability to perform his duties.

# F. DEMAND FOR RELIEF

Plaintiff respectfully requests that this Court:

a. Enter judgment in favor of Plaintiff and against Defendant;

b. Order a formal investigation into Community Transit's compliance with the ADA and Section 504;

c. Reinstate Plaintiff to his former position with reasonable accommodations, or award compensatory and equitable relief of approximately $220,200, calculated as follows:

- $52,650 for past wage differential from May 22, 2024, to July 24, 2025, based on an annual salary difference of $30,000 between Community Transit ($60,000/year) and Plaintiff's current employment ($30,000/year);
- $17,550 for loss of health insurance and out-of-pocket medical costs from June 2024 to September 2024;
- $15,000 for past benefits and retirement contributions from May 22, 2024, to July 24, 2025;
- $90,000 for future wage differential over three years (front pay, $30,000/year).
- $45,000 for future benefits and retirement contributions over three years (front pay, $15,000/year);

d. Order ADA and Section 504 training for Community Transit employees;

e. Issue injunctive relief to prevent future violations;

f. Award costs and reasonable attorney's fees, if applicable;

g. Award pre-judgment and post-judgment interest;

h. Grant such other and further relief as the Court deems just and proper

# G. NO SOVEREIGN IMMUNITY

1. **Community Transit is a Political Subdivision**

   Community Transit is a political subdivision of the State of Washington, not an arm of the state, and thus lacks Eleventh Amendment immunity. See *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) (holding that political subdivisions are not entitled to state sovereign immunity). In *Lincoln v. Luning*, 133 U.S. 529 (1890), the Supreme Court permitted suits against counties in federal court, distinguishing them from state governments.

2. **Waiver of Immunity Through Federal Funding**

   Community Transit receives federal financial assistance under 49 U.S.C. § 5307, voluntarily waiving sovereign immunity for claims under Section 504 and the ADA, pursuant to 42 U.S.C. § 2000d-7. See *Doe v. Nebraska*, 345 F.3d 593 (8th Cir. 2003); *Thomas v. University of Houston*, 155 F.3d 559 (5th Cir. 1998).

# H. SUPPORTING EVIDENCE

Exhibits attached include:

- Exhibit A: Termination letter dated May 22, 2024.
- Exhibit B: January 11, 2024, text and affidavit regarding accommodation request and harassment.
- Exhibit C: Letter from Samantha Bowes dated July 16, 2025, admitting that I filed a complaint. Additional documents, including medical records and performance evaluations, will be provided during discovery, subject to protective orders as necessary.

## I. JURY DEMAND

The plaintiff demands a trial by jury on all issues so triable.

## J. DECLARATION UNDER PENALTY OF PERJURY

I, Jonathan Collier, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I am the Plaintiff in this action, that I have read this complaint, and that the facts stated herein are true and correct to the best of my knowledge.

Executed this 25th day of July 2025.

_____

Jonathan Collier

# EXHIBIT A



May 22, 2024

Jonathan Collier
702 W. Casino Rd
Everett, WA 98204

Dear Mr. Collier,

This letter is to inform you of the company's decision regarding your probationary employment.

You were hired as a Coach Operator Trainee on January 8, 2024. You graduated from training and became a full time Coach Operator on March 31, 2024. Since you became a full-time operator, we have observed your performance for the purpose of deciding whether you demonstrate the qualifications needed for success at Community Transit.

A description of the probationary period and its purpose is stated in the ATU Collective Bargaining Agreement, Section 1.2, Probation Period:

> "Except that trainee coach operators do not begin their initial probationary period until after they graduate from training, all new employees shall serve a probation period for the purpose of determining whether they can satisfactorily demonstrate the skills, abilities and work ethic necessary to perform their job. During this initial probationary period the Employer may terminate the employee without cause and the probationary employee may not grieve this action...Full time employees will complete their probation period after they have worked 180 days and 1040 hours."

There has not been adequate progress observed in your performance during this probationary period. It is concluded that you do not demonstrate the performance suitable as a successful coach operator. Therefore, your employment with Community Transit is terminated effective today, May 22, 2024.

Respectfully,

*[signature]*

Caton Smith
Assistant Manager of Transportation

CC:   J. Williams; V. Estes, ATU-Dani Julien; Personnel file; OPS file

# EXHIBIT B

## Gabriel

Thank you!!!

Jan 12, 2024 at 3:15 PM

Jonathan Collier just came down to HR and talked to me about a conflict and confusion with Quinton. I told him to give you a call directly.

Feb 20, 2024 at 3:30 PM

I talked with him. Thank you for sending him my way.

# EXHIBIT C



Samantha Bowes,
Sr. Director, Employee Engagement

Jonathan,

I am writing in response to your complaint regarding your termination from Community Transit.

I appreciate you reaching out about the matter; we do take these concerns very seriously. I have looked into the matter and Community Transit is confident that your termination on 5/24/2024 was related solely to your performance as a Coach Operator and was in no way a response to the complaint you had made in January of 2024.

In January 2024, you communicated your concern about a comment made to you by another Coach Operator who was helping facilitate the pre-academy. When you discussed your concern with the Training Instruction Program Manager, you did not communicate that you had a disability for which you needed an accommodation in order to participate in the academy or as a Coach Operator. You then continued to participate, successfully graduating from the Coach Operator Academy on 3/29/24 and becoming a full Coach Operator.

Unfortunately, during your time as a probationary Coach Operator, you went off-route multiple times. The final incident that led to your termination involved your going off route, disregarding Dispatch's instructions to wait for a supervisor to escort you and your coach back onto route, and holding your personal cell phone in your hand to consult maps/navigation while turning the coach around using a 4 point turn in a two-lane road. Your actions are considered Major and Severe infractions for Coach Operators at Community Transit because of the potential safety implications. It is these performance issues that resulted in your termination.

You have not presented, and my investigation did not reveal, any connection between the concern you expressed in January and the decision to end your probationary employment in May.

I understand that it is undoubtedly very frustrating that your probationary employment was not successful. However, we disagree that the decision to end your employment was made for an impermissible reason. I hope that this addresses your concern, and we wish you the best in your current and future employment.

Sincerely,

*Samantha*

Samantha Bowes

Sr. Director, Employee Engagement

samantha.bowes@commtrans.org

2312 W Casino Rd.    Everett, WA 98204    ph (425) 348-7100    TTY Relay: 711    communitytransit.org




